QUIRK, *by Next Friend, Appellant*, v. THE ST. LOUIS UNITED ELEVATOR COMPANY.

### Division Two, January 9, 1895.

1. **Practice**: NEGLIGENCE: ORDINARY CARE: INSTRUCTION. Plaintiff can not, in an action for damages for personal injuries, complain of an instruction given for defendant because it contains no definition of "ordinary care," when none of the instructions given in the case contains a definition of the term.

2. ———: ———: ———: ———. A party desiring a definition of a term in a civil case should ask an instruction to that effect.

3. **Definition of Terms**: ORDINARY CARE. While ordinary care is usually defined to be such care as persons of ordinary prudence would exercise under like circumstances, it is a relative term and must accommodate itself to the exigencies of the particular case in which it is exercised. What would be ordinary care in one class of cases would sometimes be gross negligence in another.

4. **Practice**: NEGLIGENCE: ORDINARY CARE: INSTRUCTIONS. In an action for personal injuries sustained while walking along a public street, by being struck by a car pushed from defendant's elevator, over a switch crossing the street to the main track of a railroad, an instruction that the rails were themselves a warning that they were to be used in moving cars thereon, and that it was the duty of plaintiff to anticipate that they might be so used, and to be reasonably on his guard to avoid injury, if they should be so used, and if there were no proper means for giving notice of such intended use, this fact, if plaintiff might have noted it by the use of ordinary care, was reason for the exercise of greater vigilance upon his part, and if plaintiff might, by the exercise of ordinary care, have discovered that the car was approaching him, and might, by ordinary activity and vigilance, have escaped, he could not recover, however gross may have been the negligence on the part of defendant in failing to give notice of the movement of the car, is erroneous in that it apparently requires more than ordinary care on plaintiff's part.

5. ———: ———: ———: ———. It was error in such case to require plaintiff to anticipate the use to which the street might be put, to wit, that of "running cars thereon," while defendant was not required to anticipate that the "public street" would also be put to its ordinary use, that of foot passengers crossing the same.

6. ———: INSTRUCTIONS. An instruction which is vicious or vaguely worded will not be cured by others given, except in very plain cases, entirely free from doubt.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

The following instructions referred to in the opinion were given by the court at the instance and request of the plaintiff and the defendant:

For the plaintiff:

"1. The court instructs the jury, that if you believe from the evidence in this case that on the dates hereinafter mentioned the defendant was engaged in the grain elevator business in the city of St. Louis, and state of Missouri; and if you further believe from the evidence that on the dates. hereinafter mentioned Biddle street and the levee, at the points hereinafter mentioned, and at the times hereinafter stated, were open public streets of the city of St. Louis, and greatly used as such for travel; and if you further believe from the evidence that on the twenty-first day of June, A. D. 1890, the defendant was operating a railway, tracks and cars, in connection with its said business, as aforesaid, over, across and along Biddle street and the levee; and if you further believe from the evidence that on the twenty-first day of June, A D. 1890, Jas. Quirk, Jr., was passing west along Biddle street and the levee, where the said railway tracks. and cars do pass over said streets; and if you believe from the evidence that the defendant, through its agents, servants and employees, negligently, carelessly and recklessly, and without any warning or notice to the said Jas. Quirk, caused one of the cars operated by it to be moved, shunted or rolled with great force, one

against another, and along a track which it was then operating (if you believe from the evidence it was so operating said track), thereby coming with great force against and upon plaintiff, whereby he was knocked down, run over, and sustained the injuries complained of; and if you further believe from the evidence that at said time the plaintiff was in the exercise of ordinary care, as defined by these instructions, and was not guilty of negligence directly contributing to said injury, then your verdict in this case should be in favor of the plaintiff, and it is your duty to so find.

"2. The court instructs the jury, that if you believe and find from the evidence in this case that on the twenty-first day of June, A. D. 1890, plaintiff, Jas. Quirk, Jr., was a minor, aged about twelve years; and if the jury further find from the evidence that on the twenty-first day of June, A. D. 1890, said Jas. Quirk, Jr., was run over, crushed and injured by a car on a railway track just south of the elevator building, described in the evidence; and if the jury find from the evidence in this case that the place where said James Quirk, Jr., was run over and sustained the injuries complained of was a public street or highway, of the city of St. Louis; and if the jury further find from the evidence that said car was so caused to run over and injure said Jas. Quirk, by reason of another car or cars being thrown against said car with great force, and thereby knocking and driving said car against said Jas. Quirk, Jr.; and if the jury find from the evidence that said car was so caused to run over said Jas. Quirk, while on said highway or street, through the servants of defendant, St. Louis United Elevator Company, so causing said car to be thrown against or bumped against by another car upon said track; and if the jury further find from the evidence that no notice or warning was given of such move-

ment of said cars, and that said action of the servants of the St. Louis United Elevator Company in throwing said car in said manner was not the exercise of ordinary care under the circumstances; and if the jury further find from the evidence that said act of said defendant's servants in so causing said cars to move along said track caused an injury to plaintiff's leg or thigh, then, if the jury further find that at the time the said Jas. Quirk, Jr., was exercising ordinary care at the time of his injury, and was not guilty of negligence contributing to said injury, he is entitled to recover in this case, and it is your duty to so find.

"3.     The court instructs the jury, that if you believe from the evidence that the place where Jas. Quirk, Jr., was run over and sustained the injuries complained of, was a public street or highway of the city of St. Louis, then said Jas. Quirk, Jr., had a right to pass over said street or highway, provided he used ordinary care, as defined in the other instruction in so doing.

"4.     The court instructs the jury, that if you find from the evidence that Jas. Quirk, Jr., was proceeding with, and at the time of his injury was exercising, care according to his age and discretion, and such as is usually exercised by boys of his age and discretion, then he was not guilty of the want of ordinary care, and was not guilty of negligence contributing to his injury, within the meaning of that term, as contained in these instructions.

"5.     The court instructs the jury, that if they find for the plaintiff, in estimating his damages they should take into consideration not only plaintiff's age, the physical injury inflicted, and the bodily pain and mental anguish endured, but also any and all such permanent personal injury as you may believe from the

evidence he has sustained, in direct consequence of the acts herein complained of."

Given for the defendant:

"A. The jury is instructed, that the plaintiff in this case bases his right to recovery against the defendant upon the charge that the defendant, through its servants, negligently, carelessly and recklessly caused one of its cars to be moved with great force against another, and along a track projected in the street, without giving any warning or notice to plaintiff of its intention to move its cars upon the track, the true meaning of which is, that the defendant was negligent in the movement of the cars, and in not giving notice thereof.

"This charge the defendant denies, which imports that it not only was not negligent in the movement of its cars, and that it did give notice, but that, if it did not give notice, that its failure to do so was not negligence.

"In addition to denying this charge, as a further ground of defense the defendant charges, that whatever injuries the plaintiff received by reason of a collision with the cars moved by the defendant, is attributable to his own want of care.

"You are instructed that it devolves upon the plaintiff to prove, by the preponderance or weight of evidence, the truth of the charge made by him against the defendant as a ground of recovery.

"So far as the plea of the defendant is concerned, that the plaintiff was himself guilty of want of care, which in part caused his own injuries, the *onus* of establishing such want of care on the part of the plaintiff rests upon the defendant. This, however, does not necessarily mean that the defendant must introduce independent evidence showing such want of care, but the fact of want of care on the part of plaintiff may be

drawn from the plaintiff's evidence as well as the evidence offered on the part of the defendant.

"B.   Negligence, as used in the instructions given you in this case, means the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances; or the omission to do something which a person of ordinary prudence would have done under the same or similar circumstances.   The mere proof of injury through instrumentalities belonging to, or used by, the defendant, does not establish a liability upon the part of the defendant for the injuries so suffered; and it is not proper for you, in reaching a determination as to whether the defendant was negligent, to inquire whether the accident might have been avoided if the defendant had anticipated its occurrence; but whether, taking the circumstances as they then existed, it was negligent in failing to anticipate and provide against the occurrence, as the testimony shows it did happen.

"So far as the charge of contributory negligence on the part of the plaintiff is concerned, you are instructed, if you find such to be the fact, that rails laid upon the street were themselves a warning that they were to be used for the purpose of moving cars thereon; and in approaching such rails, even though they were in the public street, it was the duty of the plaintiff to anticipate that they might be so used, and to be reasonably upon his guard, if they should be used, to avoid injury therefrom; and if there was no proper guard or instrument or means for giving notice for such intended use, this fact, if the plaintiff might have noted it by ordinary care, was reason for the exercise of greater vigilance upon his part; and if you believe from the evidence that the plaintiff. might, by the exercise of ordinary care, have discovered that the cars were approaching him, and might, by ordinary activity and vigilance, have

escaped coming in contact with them, then you are instructed that the plaintiff can not recover, however gross may have been the negligence on the part of the defendant in failing to give notice of the movement of such cars.

"The law did not require of the defendant the use of every possible precaution to avoid injury to individuals in the movement of its cars upon the track, nor of any particular means which it may appear, after the accident happened, would have avoided it.

"The requirement of the defendant is only to use such reasonable precaution to prevent accident to others, who at the time were themselves using ordinary care, as would have been adopted by prudent persons prior to the accident.

"Its duty, as well as the duty of the plaintiff, is to be measured by the condition of things at the place where the accident took place, as they were known to exist by each of the parties at the time the acts of each are complained of as being negligent, and these acts can not be characterized one way or the other by the subsequent determination of conditions unknown at the time to both, or to either, except so far as that knowledge may properly affect the act of the one so informed.

"If they acted with reasonable prudence and good judgment, they are not to be made responsible because the event, from causes which could not be foreseen, nor reasonably anticipated, has disappointed their expectations.

"Again, if you find in the light of these definitions that neither the plaintiff nor the defendant was guilty of negligence, but that the injury was the result of an accident, then your verdict should be for the defendant.

"C.   If the jury find from the evidence in this case that when plaintiff attempted to cross the railroad

track of defendant at the time and place in question defendant was moving cars on said track, and that if plaintiff had looked he could have seen said moving cars, or if he had listened he could have heard the approach of said cars on said track in time to have refrained from attempting to cross said track in front of said cars; and if they further find from the evidence in this case that plaintiff walked or ran in front of said moving cars on said track without looking or listening for the approach of said cars on said track and was thereafter struck and injured by one of said moving cars, then they are instructed that plaintiff is not entitled to recover in this action, and your verdict must be for the defendant.

"D. If the jury find from the evidence that at the time of the accident in question, as the plaintiff, Jas. Quirk, Jr., was approaching the track upon which he was injured, cars were being moved from and out of the elevator building upon and along said track, and that the rate of speed at which said cars were being moved was not in itself a dangerous rate of speed, and the watchman or watchmen of the elevator company saw said Jas. Quirk, Jr., approaching said track and warned him against coming upon said track at that time, and did so in time, had said warning been heeded, to prevent the injury to said James Quirk, Jr., and said Quirk, in spite of such warning, rushed upon the track in front of the moving cars, and was so injured, the plaintiff can not recover, and your verdict should be for the defendant."

*Edmund A. B. Garesche* and *William L. Murfree* for appellant.

(1) The rights of the public are not subordinate to those of a railroad company at the crossing of a

public street in a city. *Zimmerman v. Railroad*, 71 Mo. 477; *Eswin v. Railroad*, 96 Mo. 298; *Jennings v. Railroad*, 112 Mo. 268. (2) The law charges persons operating railroad cars over the crossing of a public street in a city with the knowledge that pedestrians will be, and have a right to be, upon the street, and, out of tenderness for human life, charges those in control of such dangerous agencies, with the duty of affirmative and active watchfulness at such places. *Eswin v. Railroad*, 96 Mo. 297; *Hilz v. Railroad*, 101 Mo. 53; *Dunkman v. Railroad*, 95 Mo. 232. (3) If the failure, of persons operating railroad cars over the crossing of a public street in a city, to discover the presence of a passenger on the track, is due to a want of that affirmative and active vigilance which the law imposes as a duty, in such a case, and which would have enabled them to have avoided the injury by the use of reasonable care, then such omission and want of reasonable care must be held to be the proximate cause of the injury, notwithstanding the negligence of the person injured. *Hilz v. Railroad*, 101 Mo. 54; *Bell v. Railroad*, 86 Mo. 599; *Frick v. Railroad*, 75 Mo. 595; *Harlan v. Railroad*, 65 Mo. 22; *Dunkman v. Railroad*, 95 Mo. 232. (4) Even if the presence of the rails in the street is to be regarded as a warning that they are to be used for the purpose of moving cars thereon, the effect of such warning can be no more than to charge one approaching a railroad track at such crossing with the duty of using his senses to ascertain the approach of the cars. *McGrath v. Railroad*, 59 N. Y. 468; *Wyoming v. Railroad*, 64 Mich. 94. (5) The running of railroad cars separately, uncoupled together, by gravity, or by previously imparted impulse, over a street crossing in a populous city, without any person in charge or control of them, or any watchman at the crossing to warn passers-by, is an act of gross negligence. Wood on

Railroads, 1517; *O'Connor v. Railroad*, 94 Mo. 150; *Kay v. Railroad*, 65 Pa. St. 269; *Butler v. Railroad*, 28 Wis. 487; *Brown v. Railroad*, 32 N. Y. 597; *Reagan v. Railroad*, 93 Mo. 348; *Reifsnyder v. Railroad*, 57 N. W. Rep. (Iowa), 692. (6) Although a person approaching a railroad track at a street crossing, is bound to use his senses for his safety and keep a sharp watch for cars, he is not bound to anticipate an act of negligence, or that those in control of the track and cars will run over the crossing by gravity, or by previously imparted impulse, without any person in control of them, or any watchman, or other proper provision for warning passers-by at the crossing. *O'Connor v. Railroad*, 94 Mo. 150. (7) An instruction as to contributory negligence, which tells the jury that if they find from the evidence that plaintiff, by the use of ordinary care, might have escaped the danger, he can not recover, etc., is error. The jury should be instructed that if plaintiff, by the use of ordinary care (*i. e.*, an absence of contributory negligence), could have avoided the injury, then he can not recover, etc.

*J. E. McKeighan* and *George S. Grover* for respondent.

(1) The question of the negligence of the defendant, as well as that of the plaintiff contributing to his injury, under all the facts and circumstances of this case, was fairly submitted to the jury. See instructions. (2) Such a question, in view of the conflict in the testimony, was manifestly one of fact for the jury, and not one of law to be determined by the court. *Huhn v. Railroad*, 92 Mo. 440; *Roddy v. Railroad*, 104 Mo. 250. (3) The triers of the fact have acquitted the defendant, and found the plaintiff guilty of negligence in this cause, and from such finding, in the

absence of any evidence of prejudice or passion—and no such misconduct is here charged—the plaintiff can not appeal.   Authorities cited *supra*.   (4)   There was no error in admitting the testimony of neighbors, as it was part of the *res gestae*.   *Leahey v. Railroad*, 97 Mo. 165; *Tetherow v. Railroad*, 98 Mo. 74.   (5)   The entire series of instructions given must be taken together, and, when so construed, the case was fairly and impartially submitted to the jury.   *Reilly v. Railroad*, 94 Mo. 600.   (6)   Even if defendant's instruction "B" stood alone, it would be a proper one in this case, under the evidence here adduced.   *McGrath v. Railroad*, 59 N. Y. 468; *Mynning v. Railroad*, 64 Mich. 94; *Jennings v. Railroad*, 112 Mo. 275.

SHERWOOD, J.—Action for damages brought by plaintiff against the defendant company for injuries received by plaintiff by being struck by one of defendant's cars as it issued from the elevator and moved down the track.   There was evidence that plaintiff and his companions were warned of their danger as they approached the railroad track by the hallooing of the crossing watchman of the Wabash Railroad Company; but they paid no attention to it, rushed in front of the moving car, and were all more or less injured in the collision which instantly occurred, one of the number being killed outright.   As to the warning of danger, there was evidence of a contrary effect to that before mentioned.

There was no evidence that there was a brakeman on the car that struck plaintiff; it would seem there was none.   The evidence for plaintiff showed that James Quirk, Jr., who was at that time twelve years of age, went, on the afternoon of June 21, 1890, with a party of other boys of about the same age, from the neighborhood of his home in the city of St. Louis to

the river at the foot of Carr street, where some of the boys went in swimming; that on their way to the river they went down Biddle street, passing the defendant's elevator, which is located at the foot of Biddle street, near the levee; that a railroad track or switch extends from the Wabash track through the elevator and across Biddle street and joins the main Wabash track again; that over this switch cars are taken into the elevator to be loaded or unloaded and then returned to the main track; that as the boys passed on their way to the river, they saw one of the cars standing half in the elevator and half out into Biddle street; that Biddle street, at this point where this switch crosses it, is a public street of the city of St. Louis, used by both vehicles and foot passengers; that this party of little boys, after going in swimming and playing about the ferry wharf boat at the foot of Carr street and the mouth of Biddle street sewer for some hours, started to go home, up Biddle street, and again passed the elevator; that as they approached they saw a car again standing half in and half out of the elevator; that the boys were walking in couples, side by side, the plaintiff and another boy being behind; that as the plaintiff stepped upon the track, the stationary car moved suddenly, "jumped" and struck him; that he was knocked down and the wheels of one truck passed over his right leg, seriously and permanently injuring him; that another boy, Rudolph Ketcher, was knocked down and killed; that James Donovan and Willie Craemer were also struck, but not seriously injured.

There was conflict of evidence as to whether the car was moving or standing still at the time plaintiff stepped upon the track.

It further appeared from defendant's evidence that the cars by which the injury was inflicted are not operated by an engine, but are moved, when it is so

desired, from the inside of the elevator by a rope and a steam capstan; that the winding drum was only twelve inches in diameter and made thirty revolutions a minute or about a mile an hour; that the rope was fastened to the last one of a string of cars and by that means they were pushed out of the elevator; that outside the building the track descended by a slight down grade to the Wabash track; that the string of cars in being pushed out were not coupled together; that as they left the building and reached the incline they continued to run by force of gravity. How fast they ran after leaving the building, is a matter in dispute.

The instructions for the plaintiff and those for the defendant were very fair, and presented the respective theories of the adverse parties very well, with an exception to be presently noticed. As the other instructions will accompany this opinion it is unnecessary to insert them here at large.

It is claimed, on behalf of plaintiff, that instruction "B," given at defendant's instance, was unsound in its law. This is the only instruction in the series of which complaint is made by the plaintiff. It is as follows:

"Negligence, as used in the instructions given you in this case, means the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances; or the omission to do something which a person of ordinary prudence would have done under the same or similar circumstances. The mere proof of injury through instrumentalities belonging to or used by the defendant does not establish a liability upon the part of the defendant for the injuries so suffered; and it is not proper for you, in reaching a determination as to whether the defendant was negligent, to inquire whether the accident might have been avoided if the defendant had anticipated its occurrence; but whether, taking the cir-

cumstances as they then existed, it was negligent in failing to anticipate and provide against the occurrence, as the testimony shows it did happen.   So far as the charge of contributory negligence on the part of the plaintiff is concerned, you are instructed, if you find such to be the fact, that rails laid upon the street were themselves a warning that they were to be used for *the purpose of moving cars thereon;* and in approaching such rails, even though they were in the public street, it was the duty of the plaintiff *to anticipate that they might be so used, and to be reasonably upon his guard, if they should be so used, to avoid injury therefrom; and if there was no proper guard or instrument or means for giving notice for such intended use, this fact, if the plaintiff might have noted it by ordinary care, was reason for the exercise of greater vigilance upon his part; and if you believe from the evidence that the plaintiff might, by the exercise of ordinary care, have discovered that the cars were approaching him, and might, by ordinary activity and vigilance, have escaped from coming in contact with them, then you are instructed that the plaintiff can not recover, however gross may have been the negligence on the part of the defendant in failing to give notice of the movement of such cars.*   The law did not require of the defendant the use of every possible precaution to avoid injury to individuals in the movement of its cars upon the track, nor of any particular means which it may appear, after the accident happened, would have avoided it.

"The requirement of the defendant is only to use such reasonable precaution to prevent accident to others, who at the time were themselves using ordinary care, as would have been adopted by prudent persons prior to the accident.

"Its duty, as well as the duty of the plaintiff, is to be measured by the condition of things at the place

where the accident took place as they were known to exist by each of the parties at the time the acts of each are complained of as being negligent, and these acts can not be characterized one way or the other by the subsequent determination of conditions unknown at the time to both, or to either, except so far as that knowledge may properly affect the act of the one so informed.

"If they acted with reasonable prudence and good judgment, they are not to be made responsible because the event, from causes which could not be foreseen, nor reasonably anticipated, has disappointed their expectations.

"Again, if you find in the light of these definitions that neither the plaintiff nor the defendant was guilty of negligence, but that the injury was the result of an accident, then your verdict should be for the defendant."

This instruction covers over *two pages of printed matter*, and the whole series of instructions cover over *seven* pages in print.

Proceeding now to discuss the instruction to which plaintiff objects:  In the first place, it is objected that there is no definition of the expression *"ordinary care."* This is true, but this fault is common to all the instructions in the case, and therefore plaintiff is in no position to complain of the lack of such a definition. Besides, this being a *civil* case, if plaintiff desired a definition of the term, he should have asked an instruction to that effect,—as we have often so decided.

More serious objections, however, are to be found respecting the instruction in question.   The expression "ordinary care" is generally defined to be such care as men of ordinary prudence would exercise under like circumstances.   The term, like many other things in the law, is incapable of exact definition; like the cha-

meleon it takes its color from contiguous objects.   It is a relative term, and in order to be ordinary care it must accommodate itself to the exigencies of the particular case in which it is exercised.   In some instances, what would be ordinary care in one class of cases, would be gross negligence in another.   This principle is well illustrated in regard to the care to be taken of different articles of personal property.   Thus, "A man would not be expected to take the same care of a bag of oats as of a bag of gold; of a bale of cotton, as of a box of diamonds."   Story on Bailm. [9 Ed.], secs. 15, 186.

A similar variation in the degree of care to be exercised of one's person must prevail, in order that such care may rise to the standard and equal the measure of ordinary care.   Anything more than this was not required either of plaintiff or of defendant.   Anything less than this on the part of either would be negligence, and, if the proximate cause of the injury, then actionable negligence as to the party injured thereby.

The trouble with the instruction in question is that it *apparently* requires more than *ordinary care;* something superadded thereto.   This is obvious from the use of the words which have been *italicized* in various parts of the instruction.   If they mean *extraordinary care* then they make the instruction *erroneous;* if they do not, then they make it *misleading,* so that either view of it condemns the instruction.   Again, while plaintiff is required to *anticipate* the use to which the rails might be put, to wit, that of "running cars thereon," defendant is not required to *anticipate* that the "public street" would also be put to its *ordinary use,* that of foot passengers crossing the same, perhaps every moment of the day.   Why this inequality in stating the attitude of the respective parties?   Furthermore, plaintiff is to use *"activity and vigilance;"* he is

to "*exercise greater vigilance*" in order to *escape coming in contact* with the cars, while defendant may have been "*guilty of gross negligence in failing to give notice of the movements of such cars,*" and still escape all liability.

We can not subscribe to such a doctrine as the instruction contains, or, what amounts to the same thing, what it *seems* to contain, and what in all probability the jury were led to believe it did contain. It will not do to urge that whatever was vicious or vaguely worded was cured by the other numerous instructions, for this rule can only be applied in very plain cases, ones entirely free from doubt. This doctrine of applying good instructions to antidote the bad, has gone far enough, and should not further be extended.

For the error mentioned, we reverse the judgment and remand the cause. All concur.